UNITED STATES, Appellee

v

JULIO L. ORTIZ, Private, U. S. Marine Corps, Appellant

15 USCMA 505, 36 CMR 3

*Major Brian B. Kent,* USMC, argued the cause for Appellant, Accused.

*Lieutenant Colonel Daniel F. McConnell,* USMC, argued the cause for Appellee, United States. With him on the brief was *Captain James A. Potter,* USN.

## Opinion of the Court

FERGUSON, Judge:

Arraigned and tried before a special court-martial, convened by the Commanding Officer, 2d Bridge Company, Force Troops, Fleet Marine Force, Atlantic, at Camp Lejeune, North Carolina, the accused was found guilty of several charges in violation of the Uniform Code of Military Justice. He was sentenced to bad-conduct discharge, confinement at hard labor for four months, and forfeiture of $73.00 per month for a like period. With some reduction in the adjudged punishment, intermediate appellate authorities affirmed, and we granted accused's petition for review, specifying as the issue:

"Whether the Convening Authority was authorized to convene special courts-martial under Article 23 of the Uniform Code."

As noted above, the convening authority here involved was the Commanding Officer, 2d Bridge Company. We are informed by the Government that this organization is a separate company, with an authorized strength of 164 enlisted men, five officers, and one warrant officer. It is of a type "Normally attached to Force Engineer Battalion or Division Pioneer Battalion for operational utilization." In this instance, however, it was designated as a separate and detached command by the Commanding General, Force Troops, and purportedly authorized to convene courts-martial by the following letter:

"From: Commanding General

"To: Commanding Officer, 2d Bridge Company, Force Troops, Fleet, Marine Force, Atlantic, Camp Lejeune, North Carolina

"Subj: Authority to convene courts-martial

"Ref: (a) Art 1401.3, U. S. Navy Regulations, 1948

(b) JAG Manual sec. 0103b(5)

(c) SECNAVINST 5810.4B

(d) Arts 23 and 24, UCMJ

(e) Par 5b(3), MCM, 1951

"1. Pursuant to the authority of references (a), (b), and (c), 2d Bridge Company, Force Troops, Fleet Marine Force, Atlantic, is hereby designated a separate and detached command within the meaning of references (d) and (e). This designation shall continue until revoked by competent authority. Accordingly, the commanding officer is authorized to convene summary and special courts-martial and exercise the powers incidental to this authority as provided by law and regulation.

"2. Reference to this letter shall be made in all orders appointing courts-martial.

/s/ W. B. Kyle
W. B. KYLE"

The orders appointing accused's court-martial referred to the terms of this letter and Uniform Code of Military Justice, Article 23, 10 USC § 823.

Code, supra, Article 23, provides pertinently as follows:

"(a) Special courts-martial may be convened by—

(1) any person who may convene a general court-martial;

(2) the commanding officer of a district, garrison, fort, camp, station, Air Force base, auxiliary air field, or other place where members

of the Army or the Air Force are on duty;

 (3) the commanding officer of a brigade, regiment, detached battalion, or corresponding unit of the Army;

 (4) the commanding officer of a wing, group, or separate squadron of the Air Force;

 (5) the commanding officer of any naval or Coast Guard vessel, shipyard, base, or station; the commanding officer of any Marine brigade, regiment, detached battalion, or corresponding unit; the commanding officer of any Marine barracks, wing, group, separate squadron, station, base, auxiliary air field, or other place where members of the Marine Corps are on duty;

 (6) the commanding officer of any separate or detached command or group of detached units of any of the armed forces placed under a single commander for this purpose; or

 (7) the commanding officer or officer in charge of any other command when empowered by the Secretary concerned."

The issue before us, reduced to its simplest terms, is whether the commanding officer of a detached and separate company in the Marine Corps has the authority under Code, supra, Article 23, to convene a special court-martial, for it is within the framework of that enactment that the source of his judicial power must be found.

At the outset, we may note that Code, supra, Article 23(a)(1), (a)(2), (a)(3), and (a)(4), are irrelevant to the question before us, as they bear only on the existence of appointing authority in the Army and Air Force, or on the power so to act of a general court-martial convening authority. Authority on the part of the Commanding Officer, 2d Bridge Company, to appoint special courts-martial, if it exists, must be found in Code, supra, Article 23(a) (5), 23(a)(6), or 23(a)(7). We first consider Code, supra, Article 23(a)(5), which provides for such appointments by "the commanding officer of any Marine brigade, regiment, *detached*

*battalion, or corresponding unit;* [or] the commanding officer of any Marine barracks, wing, group, separate squadron, station, base, auxiliary air field, or other place where members of the Marine Corps are on duty." (Emphasis supplied.)

Referring to the emphasized language, the Government urges Congress intended any detached unit to have special court-martial appointing authority, suggesting that the term "corresponding unit," as used in the statute, refers back to the previous word "detached" rather than to the phrase "detached battalion." The interpretation seems strained and contrary to the plain meaning of the enactment. Clearly, the language used by Congress was intended to confer jurisdiction upon units "corresponding" in size to brigades, regiments, and detached battalions. And where "words used in the statute convey a clear and definite meaning, a court has no right to look for or to impose a different meaning." United States v Dickenson, 6 USCMA 438, 449, 20 CMR 154, 165. A plain and unambiguous statute is to be applied, and not interpreted, and "any attempt to make it clearer is a vain labor and tends only to obscurity." 50 Am Jur, Statutes, § 225, page 207. We accordingly reject the Government's contention that, under the subsection in question, any detached unit, regardless of its size, possesses authority to appoint special courts-martial.

In like manner, it is obvious the unit in question does not come within the description of a "barracks, wing, group, separate squadron, station, base, auxiliary air field, *or other place* where members of the Marine Corps are on duty." (Emphasis supplied.) We proceed to a consideration of Code, supra, Article 23(a)(6), which vests the requisite appointing authority in "the commanding officer of any separate or detached command or group of detached units of any of the armed forces placed under a single commander for this purpose."

It is claimed this provision must be read broadly to confer the power to

convene special courts-martial on any separate or detached organization which is, in effect, responsible only to the level of command exercising general court-martial jurisdiction. Emphasis is placed on the necessity for such jurisdiction and, as an example, the recent mission of a company-size unit deep in the Brazilian jungles is cited. As auguring against such an approach, we note the authorized officer strength of the company is barely sufficient to furnish the requisite three-member panel and counsel for both sides. In the face of a peremptory challenge, it would be impossible to try a special court-martial. Indeed, the record reflects that, in the instant case, the "convening authority" had to resort to other units at Camp Lejeune in order to secure sufficient personnel for the "court," with the concurrence of their commanders. And, as a result, a first lieutenant, as the "convening authority," appointed a major and a captain to a court-martial!

Be that as it may, the statute must be read as a whole and "so construed that effect is given to every provision . . . so that no part will be inoperative, superfluous, void or ineffective." United States v Lucas, 1 USCMA 19, 22, 1 CMR 19, 22; United States v Sonnenschein, 1 USCMA 64, 1 CMR 64. And to read Code, supra, Article 23(a)(6), in the manner for which the Government argues, would render Code, supra, Article 23(a)(5), completely inoperative and superfluous. As we have seen, it limits the exercise of special court-martial jurisdiction to commands in the nature of a "detached battalion, or corresponding unit." If we adopt the Government's construction of Article 23(a)(6), thereby finding *any* detached organization—regardless of its size—to have such authority, the provisions of the previous subparagraph become meaningless. It is certain Congress did not legislate so purposelessly. Rather, the meaning of the phrase "any separate or detached command" in Code, supra, Article 23 (a)(6) must be read with an eye to the categorical limitations set forth in Code, supra, Article 23(a)(5). This is but an application of the familiar doctrine

508

of *noscitur a sociis,* requiring words of an analogous meaning, when employed in a statute, to be "understood to be used in their cognate sense, to express the same relations and give color and expression to each other." 50 Am Jur, supra, § 247, page 241; Kenney v Building Com'r of Melrose, 315 Mass 291, 52 NE2d 683, 150 ALR 490 (1943). As was well stated in the cited case, at page 685:

". . . A general term in a statute or ordinance takes meaning from the setting in which it is employed. The literal meaning of a general term in an enactment must be limited so as not to include matters that, although within the letter of the enactment, do not fairly come within its spirit and intent."

Moreover, the legislative history of Code, supra, Article 23, scanty though it is, makes clear the intent of Congress not to confer special court-martial jurisdiction, as a matter of course, upon company-size units, though they be separate and detached units. In enacting this Article, it continued the provisions of the Article of War which previously governed appointment of special courts-martial in the Army and Air Force, with the addition of language making such applicable to the Naval service and Coast Guard. Hearings before House Armed Services Committee on H. R. 2498, 81st Congress, 1st Session, page 1137; House Report No. 491, 81st Congress, 1st Session, page 17; Legal and Legislative Basis, Manual for Courts-Martial, United States, 1951, page 7. Under Article of War 9, Act of June 4, 1920 (41 Stat 759, 788), as amended, appointment of special courts-martial was limited to commanding officers of districts, garrisons, forts, camps, stations, other places where troops were on duty, and those in charge of various *large* units down to a "regiment, detached battalion, or corresponding unit of Ground or Air Forces, and the commanding officer of any other detached command or group of detached units placed under a single commander for this purpose."

During consideration of pertinent amendments to Article of War 9, supra,

as a part of the "Elston Act," concern arose as to the size of units which should possess the power to convene special courts-martial. It was pointed out to the Armed Services Committee that the language employed in the Article in question was designed to permit the exercise of such authority only down "as far as a detached battalion." Hearings before House Armed Services Committee on H. R. 2575, 80th Congress, 1st Session, page 2035. We emphasize that this same language was reenacted by the Congress in Code, supra, Article 23, and made applicable to the Navy and Marine Corps. Hearings, supra, on H. R. 2498, at page 1137. Indeed, our attention is directed to no instance in which separate companies in the Marine Corps were held to possess special court-martial jurisdiction under the Articles for the Government of the Navy. A scrutiny of that antecedent of the Code would indicate they did not. See Article 26, Articles for the Government of the Navy, Act of February 16, 1909, 35 Stat 621, and 50 Am Jur, supra, § 249.

Moreover, Article 23 may not be read in a vacuum. It must be construed in light of Code, supra, Article 24, 10 USC § 824, vesting appointing authority for summary courts-martial in all commanders authorized to convene special courts-martial and also specifically giving such powers to commanders of separate company-sized units in the Army and Air Force. United States v Bernacki, 13 USCMA 641, 644, 33 CMR 173, 176. Code, supra, Article 23(a) (6), of course, applies to all the armed forces, and, according to the Government's argument, it confers special court-martial jurisdiction on a separate Marine company as a separate and detached command. Hence, it would also possess summary court-martial authority under the general provisions giving such to commanders able to convene special courts-martial. Code, supra, Article 24(a) (1). But this would render meaningless the provisions of Code, supra, Article 24(a) (2) and (3), which expressly give that power only to commanders of separate company-sized units in the Army and Air Force. It is our duty, however, to construe the Ar-

ticles in harmony and interpret them in a manner which effectuates all their provisions. United States v Bernacki; United States v Lucas, both supra. And that may be done only by holding that separate companies in the Marine Corps do not fall within the ambit of Code, supra, Article 23(a) (6).

We conclude, therefore, a separate company is not a "separate or detached command" within the meaning of Code, supra, Article 23(a) (6), as that subsection must be read in light of the other provisions of the Code, particularly the limitations involved in Code, supra, Articles 23(a) (5), and 24(a) (1), (2) and (3). At the same time, we must disclaim any intention to limit Code, supra, Article 23(a) (6), solely to commands which are in fact detached battalions or which correspond thereto. Again, so to read the legislation would render the subparagraph superfluous, for the latter units are specifically covered by Code, supra, Article 23(a) (5), and the statute should be read to effectuate each of the classifications set down therein. United States v Lucas, supra; United States v Sonnenschein, supra. We daresay it was intended to afford jurisdictional flexibility in light of rapidly changing military organizational concepts, particularly when reference is made to the proviso regarding the placement of the command or units "under a single commander for this purpose." Code, supra, Article 23(a) (6). We need not, however, decide the exact nature of those commands which possess special court-martial jurisdiction under this subsection. Suffice it to say a separate company does not come within the confines of its grant of authority.

The Government's final argument may be swiftly handled. It contends the Commanding Officer, 2d Bridge Company, under the provisions of Code, supra, Article 23(a) (7), has been empowered by the Secretary of the Navy to convene special courts-martial. In so arguing, it relies upon Article 1401.3, U. S. Navy Regulations, 1948, and sec. 0103b(5) of the Navy JAG Manual, which permit the designation by flag

or general officers of separate and detached commands, within the meaning of Code, supra, Article 23. We have no argument with these provisions insofar as they leave to the commanders named therein the authority to create or designate separate and detached commands. Cf. Manual for Courts-Martial, United States, 1951, paragraph 5b(3). But we find nothing therein which implies conferral by the Secretary concerned of special court-martial jurisdiction. Rather, it would appear the regulations in question were designed to implement those provisions of Code, supra, Article 23, which give the appointing power to the commanders of appropriately designated separate commands. And, as we have seen, the 2d Bridge Company falls without those categories. There is simply no basis here for a conclusion that the Secretary of the Navy has acted to authorize the commander in question to appoint special courts-martial.

In sum, then, we hold the commanding officer of a separate company does not possess authority to ■ appoint special courts-martial under the several classifications of commands specified in Code, supra, Article 23, nor is there any indication the Secretary of the Navy has exercised his power to grant such to the Commanding Officer, 2d Bridge Company. That he might do so, if he finds such, in his judgment, to be a necessary adjunct of the operational capabilities of separate companies in general or as to one in particular is unquestionable, but in the absence of such action, we find no basis here for the exercise of judicial power. The proceedings against Private Ortiz are a nullity.

The decision of the board of review is reversed, and the record of trial is returned to The Judge Advocate General of the Navy. A new trial may be ordered before a properly appointed court-martial.

Chief Judge QUINN and Judge KILDAY concur.