UNITED STATES, Appellee

v

JAMES A. SURTASKY, Seaman Apprentice, U. S. Navy, Appellant

16 USCMA 241, 36 CMR 397

No. 19,171

April 29, 1966

*Major Paul F. Henderson, Jr.,* USMC, argued the cause for Appellant, Accused. With him on the brief was *Major Ernest B. Wright,* USMC.

*Commander Walter F. Brown,* USN, argued the cause for Appellee, United States.

### Opinion of the Court

QUINN, Chief Judge:

The question before us is whether the special court-martial which tried and convicted the accused was convened by an officer having legal authority to appoint such courts.

In late 1964, Rear Admiral Raymond N. Sharp, Director, Field Support Activity, proposed to the Chief of Naval Operations that certain Naval Receiving Stations be consolidated with the Naval Station in their respective areas to effect economies in manpower and money. To relieve the commanding officer of the consolidated naval station of administrative burdens normally discharged by the receiving station, Admiral Sharp recommended that an officer of the Naval Station be designated Head, Military Personnel Department, and as such have command over all enlisted persons assigned, or reporting, to the Station. He further recommended that Head be empowered by the Secretary of the Navy to exercise special court-martial jurisdiction. The recommendation was routed through The Judge Advocate General of the Navy. He indicated he could discern no "legal objection" to the proposal. It was approved by the Chief of Naval Operations. Thereafter, the Secretary of the Navy specially authorized the Commanding Officer, U. S. Naval Station, Norfolk, Virginia, "to place all enlisted personnel of the Navy assigned to duty at the Naval Station under the command of the Head, Military Personnel Department of the Naval Station, who is designated as their commanding officer for disciplinary purposes." At the same time, pursuant to his authority under Article 23(a)(7), Uniform Code of Military Justice, 10 USC § 823, the Secretary invested Head with authority to convene special courts-martial for the trial of enlisted personnel of the command. On July 1, 1965, the Naval Station commander placed all enlisted persons "assigned or reporting to the . . . Station" under the command of Head, Military Personnel Department "for disciplinary purposes."[1]

The accused was an enlisted member of the Naval Station at Norfolk, Virginia. On July 20, 1965, he absented himself without authority. When he returned to the Station he was charged with unauthorized absence, in violation of Article 86 of the Uniform Code. Head, Military Personnel Department, referred the charge to trial before a special court-martial convened by him.

Appellate defense counsel contend the convening authority had no legal power to convene the court-martial. In their view, Head, Military Personnel Department, does not qualify as a command, within the meaning of Article 23, Code, supra, and could not, therefore, be empowered by the Secretary to exercise special court-martial authority.[2] They point to a letter order by the commanding officer of the Naval Station which imposes severe limitations upon the authority of Head, Military Personnel Department, to act in various areas which normally are the responsibility of a commanding officer of a command. For example, Head can sign service record entries and pay vouchers only "by direction of the Commanding Officer" of the Station. Head, say appellate defense counsel, cannot, on his own authority, even "commend" a member of his command "for a job well done." As a result, they argue, Head is so devoid of the indicia of command that

<hr>

1. In its brief, the Government points out that the establishment of Head, Military Personnel Department, as a command for special courts-martial purposes has deep roots in the Navy practice before the Uniform Code of Military Justice. Its comprehensive review of the pre-Code practice notes that officers, variously designated as Captain of the Yard, Commanding Officer, Enlisted Personnel, and Administrative Officer in Charge, were granted command over enlisted personnel at Naval Yards and were empowered to convene summary courts-martial. See CMO 4–1934, page 9. We are also referred to a

number of board of review decisions sustaining similar authorizations under the Uniform Code of Military Justice. United States v Hill, NCM 65–870, decided June 16, 1965; United States v Hartman, NCM 65–1327, decided August 19, 1965.

2. In part, Article 23 provides as follows:

"(a) Special courts-martial may be convened by—

. . . . .

(7) The commanding officer or officer in charge of any other command when empowered by the Secretary" of a Department.

the Secretary's authorization is legally ineffectual. Relying upon United States v Symonds, 120 US 46, 30 L ed 557, 7 S Ct 411 (1887), in which the U. S. Supreme Court held that the Secretary could not, by describing sea duty as shore duty, deprive an officer of his right to higher pay for sea duty, counsel conclude the Secretary could not designate Head a commander, any more than he could transmogrify sea duty into shore duty.

Much of appellate defense counsel's argument in effect challenges the wisdom of the formula evolved to meet some of the special administrative problems created by consolidation of the Receiving Station with the Naval Station. We reject any such assessment as beyond the scope of our power of review. We are ever vigilant to protect an accused against any improper influence exerted by superior authority upon a subordinate commander in the exercise of the judicial powers of his office. United States v Hawthorne, 7 USCMA 293, 22 CMR 83. However, delineation of the functions appropriate to a particular command is not improper command control. What kind of commands should be established, and what general duties and responsibilities the commanders of those units should have, are administrative matters which rest with the military. As meager as the functions entrusted to a unit may be, the decision to establish the unit as a part of the naval structure is not subject to review by this Court.

It is said that Head, Military Personnel Department, is not really a distinct and viable entity because it has no separate unit personnel diary. Maintenance of a separate personnel diary is significant in determining the enlisted membership of a court-martial. Under Article 25 (c) of the Uniform Code, enlisted members of a court-martial cannot be from the "same unit as the accused," as that body is defined in Department regulations. For purposes of Article 25, the Navy defines a unit as one "for which a separate unit personnel diary is prepared." Manual for Courts-Martial, United States, 1951, paragraph 4a, page 3. It is apparent,

therefore, that Head, Military Personnel Department may have difficulty in satisfying the requirements of Article 25 in a case in which the accused requests enlisted members. That a commander may encounter great difficulty in finding a sufficient number of qualified persons to constitute a particular court-martial does not, however, divest him of the power to convene the court. See United States v Ortiz, 16 USCMA 127, 130, 36 CMR 283.

No provision in the Uniform Code or in the Manual for Courts-Martial prescribes specific requirements of structure or function to entitle a command to exercise special court-martial jurisdiction by designation of the Secretary under Article 27 (a) (7). As we observed in United States v Hooper, 5 USCMA 391, 394–395, 18 CMR 15: "[T]he military effort may require the formation of numerous commands for special purposes. These may not, and frequently do not, fit into a fixed pattern of military units." The Naval establishment has long differentiated between administrative and operational functions. United States v Kugima, 16 USCMA 183, 36 CMR 339. This Court has itself given effect to limitations placed by superior authority on the administrative powers of a subordinate commander. United States v Gray, 6 USCMA 615, 20 CMR 331. However, the character, not the quantity, of its powers determines the basic nature of a legal entity. United States v Frischholz, 16 USCMA 150, 36 CMR 306. Although possessed of little power, Head, Military Personnel Department, has been entrusted with command over all enlisted persons at the Naval Station; and he has been designated by the Secretary of the Navy as a commanding officer of a command competent to convene special courts-martial. The evidence before us demonstrates that the grant of authority was designed to achieve a proper purpose, and is exercised by Head without any attempt at improper control by superior authority. Cf. United States v Hawthorne, supra.

True, the commanding officer of the Station appears to have attempted to circumscribe the authority of the As-

sistant Head, Military Personnel Department, to succeed to the command in the event of the "incapacity, death, or absence of" Head. Whether this limitation is legal need not detain us since it is not in issue here. Cf. United States v Kugima, supra. The record leaves no doubt that Head's command is not a mere subterfuge to enable the commanding officer of the Naval Station to delegate his own authority to appoint special courts-martial or a means by which the Secretary of the Navy can have his personal appointee operate on the local command level. Cf. United States v Bunting, 4 USCMA 84, 87, 15 CMR 84.

According to the Organization Charts of the Norfolk Naval Station, Head's primary duty is that of a staff officer to the commanding officer of the Station. Duality of duty in the military is commonplace. It does not import error into court-martial proceedings against an accused, if it does not result in denying him a right to which he is entitled. United States v Doyle, 9 USCMA 302, 26 CMR 82; United States v Grow, 3 USCMA 77, 11 CMR 77; cf. United States v McGary, 9 USCMA 244, 26 CMR 24. There is no intimation in this case that Head's concurrent responsibilities as a staff officer adversely affected any of the accused's rights. We conclude, therefore, that Head, Military Personnel Department, was the commanding officer of a command authorized by the Secretary of the Navy to convene special courts-martial.

The decision of the board of review is affirmed.

Judges FERGUSON and KILDAY concur.